35 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald G. JONES, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-1958.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1994.
 
 Before: KENNEDY and SILER, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Ronald G. Jones appeals the district court's grant of summary judgment to the Secretary denying his claim for social security disability benefits. We affirm, as the Secretary's decision is supported by substantial evidence.
 
 Background
 
 2
 Jones applied for social security disability benefits on June 14, 1990, alleging he became disabled on September 21, 1989, due to multiple sclerosis. His claim was denied through the administrative process. Upon judicial review of his claim, the district court accepted the magistrate judge's report and recommendation and granted the Secretary's motion for summary judgment, finding there was substantial evidence in the record to support the denial of benefits.
 
 
 3
 At the time of the administrative hearing on October 3, 1991, Jones was 35 years of age. He had worked at General Motors from 1978 through 1989 installing headlights and occasionally doing some spot welding using an air gun. He left his job because he lost his footing, banged his head into a cabinet, and fell over while working. He also experienced frequent periods of confusion accompanied by loss of memory and concentration. Since leaving his job at General Motors in September, 1989, he has not worked at any other gainful employment.
 
 
 4
 Jones's subjective medical complaints include bad balance, weakness on the right side of the body, loss of control of his right leg, confusion, blurred vision, disorientation, inability to concentrate, headaches, occasional reduced grip strength and numbness in the right hand, and fatigue. Objectively, Jones was diagnosed with probable multiple sclerosis on October 2, 1989, by Dr. Henry Hagenstein. In April 1990, Dr. Hagenstein stated "[m]y impressions remain the same, and that is [that Jones] suffers from multiple sclerosis with fatigue being the incapacitating factor at this point." In June 1990, Jones was diagnosed by an ophthalmologist as having a vitreous floater, resulting in a black spot appearing in his right eye field of vision. An examination report from the Bristolwood Clinic on June 20, 1990, indicated that Jones's right leg was weak, buckled and was clumsy; that Jones walked slowly and cautiously; that he could not assume any position other than standing still without danger of collapsing; and that he could not squat, rise from a squatting position, hop on one foot, or walk heel to toe. Dr. Hagenstein examined him again on July 2, 1990, finding spasticity (increased reflexes), ataxia, mild paresis (incomplete paralysis) and fatigability in the right leg, and a generalized tremor. In December 1990, Dr. Forrer examined him and stated that he showed no abnormalities of gait or coordination; he was well oriented for time, place, and person; his abstract thinking was intact; and from a psychiatric point of view, he was basically intact.
 
 
 5
 Dr. Goldstein, a licensed psychologist, examined Jones on September 5, 1991, and reported that he had memory problems, specifically with respect to the retention of sequential information or with logical sequencing. Dr. Goldstein further stated that:
 
 
 6
 [g]iven the difficulties this man describes and which apparently have been delineated by appropriate medical specialists, it does not appear that he could perform any of his past work and on the same basis, there does not appear to be any type of work that he could be realistically expected to perform on a consistent basis.
 
 
 7
 Similarly, Dr. Hagenstein stated in a report, after examining Jones on October 21, 1991, that Jones had multiple sclerosis with incapacitating fatigue and that he was "unable to perform any substantial gainful employment within the work community."
 
 
 8
 Dr. Neil Freidman performed a consultive examination on Jones on January 10, 1992, finding no functional impairments and no gross fatigue on repetitive or sustained activity. He further found that: (1) Jones had full and pain-free range of motion in the lumbosacral spine and in the major joints of the lower extremities; (2) he could ambulate without the use of an assistance device; (3) he had a normal gait; (4) he was able to walk on toes and heels as well as squat and arise from a deep knee bend without difficulty; and (5) he had a possible intentional tendency to fall backwards when standing with arms outstretched in front and eyes closed, as he was able to catch himself and prevent actual falling and tended to fall even with artificial support being supplied to his back. Dr. Freidman opined that Jones could occasionally lift and carry up to 35 pounds, frequently lift and carry up to 20 pounds, and stand and walk up to four to six hours a day.
 
 Discussion
 
 9
 Pursuant to 42 U.S.C. Sec. 405(g), this court has jurisdiction to review the Secretary's decisions. Judicial review of the Secretary's decisions is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. See Brainard v. Secretary of Health & Human Servs., 889 F.2d 679, 681 (6th Cir.1989) (per curiam); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 10
 In determining the existence of substantial evidence, this court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, see Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam), and even if substantial evidence also supports the opposite conclusion, see Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc).
 
 
 11
 Jones claims that substantial evidence does not support the Secretary's denial of benefits because the decision does not follow Wilcox v. Sullivan, 917 F.2d 272 (6th Cir.1990), and Parish v. Califano, 642 F.2d 188 (6th Cir.1981). The Secretary counters by arguing that Jones's claim based on Wilcox and Parish has been waived. Alternatively, the Secretary claims the decision below fully complies with these two precedents.
 
 
 12
 The Secretary's waiver argument in not well-founded. Citing cases holding that it is inappropriate for this court to review issues not presented to the district court or the administrative agency below, the Secretary argues that as Jones did not rely on Wilcox or Parish in the district court or during the administrative process, this court should not consider his argument. The Secretary is in error, as Jones is not raising a new issue. The issue Jones raises in this court is the same issue he raised below--whether substantial evidence supports the Secretary's decision. In order to prevail on waiver grounds, the Secretary must provide this court with binding precedent that holds a party may not rely on cases in this court if the cases were not relied on in the proceedings below. The Secretary has failed to do so.
 
 
 13
 Looking to the merits of this appeal, Wilcox and Parish hold that when a claimant with multiple sclerosis applies for social security benefits, it is error to focus on periods of remission from the disease to determine whether the claimant has the ability to engage in substantial gainful employment. Wilcox, 917 F.2d at 278; Parish, 642 F.2d at 193. Jones argues that had the district court followed Wilcox and Parish it would have found that the Secretary's decision was not supported by substantial evidence.
 
 
 14
 Clearly, multiple sclerosis is a progressive disease for which there is no cure. Parish, 642 F.2d at 193. The disease is subject to periods of remission and exacerbation. Id.; Wilcox, 917 F.2d at 274. Nevertheless, in this circuit, multiple sclerosis is not per se disabling under the social security regulations. See Dettloff v. Secretary of Health & Human Servs., No. 92-2507, 1993 WL 503086, 1993 U.S.App. LEXIS 32039 (6th Cir. Dec. 7, 1993); Linton v. Secretary of Health & Human Servs., No. 90-1715, 1991 WL 150804, 1991 U.S.App. LEXIS 18818 (6th Cir. Aug. 5, 1991); Biltoft v. Bowen, No. 88-3659, 1989 WL 46138, 1989 U.S.App. LEXIS 6276 (6th Cir. May 5, 1989); Headrick v. Secretary of Health & Human Servs., No. 87-1939, 1988 WL 120897, 1988 U.S.App. LEXIS 15161 (6th Cir. Nov. 14, 1988). Thus, the dispute in this case is whether substantial evidence, excluding evidence focusing on periods of remission, see Wilcox 917 F.2d at 278, supports the Secretary's finding that Jones was not disabled as he retained the capacity to perform a limited range of sedentary work.
 
 
 15
 The ALJ asked a vocational expert ("VE") to assume that: (1) Jones could perform a restricted range of unskilled, sedentary work in a non-hazardous environment that provided a sit/stand option; (2) he could not perform production line jobs requiring the use of his upper extremities, or any jobs requiring more than minimal use of his dominant right hand; and (3) the jobs that he could perform would have to be low in stress and not place excessive demands on his ability to concentrate or remember. With these limitations in mind, the ALJ asked the VE if there were any jobs where Jones could be employed. The VE responded affirmatively that Jones could work as an information clerk, with approximately 1,600 such jobs in the region, and as a security guard monitoring television screens, with approximately 6,000 such jobs in the region. The VE added that there were approximately 2,700 bench-type inspection jobs he could perform, as well as approximately 4,000 telephone sales jobs.
 
 
 16
 The ALJ next asked the VE to assume that Jones had blurred vision, confusion, impaired memory, limited use of his dominant right hand, and problems with fatigue, which required him to sleep during the day a few days a week. The VE stated that if Jones's statements were true, he would not be able to perform any work.
 
 
 17
 The ALJ determined that Jones's subjective complaints were not fully credible, finding that he has the residual functional capacity to perform sedentary work, but that he could not perform jobs requiring lifting more than ten pounds, prolonged standing or walking, stress, or complex maneuvers. The ALJ further found that he could not perform production line jobs that required use of the upper extremities, nor jobs that did not allow a sit/stand option. Based on these findings and the VE's testimony, the ALJ concluded that Jones was not disabled as defined by the social security regulations.
 
 
 18
 This court's review is limited. Were it not, the outcome of this case might be different. However, as previously stated, this court is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards. Richardson, 402 U.S. at 401. Looking at the record as a whole, substantial evidence supports the Secretary's decision. Based primarily on Jones's statements, Dr. Hagenstein stated that the incapacitating factor of Jones's condition was fatigue. Likewise, Jones subjectively complained of fatigue at the hearing. However, Dr. Friedman examined Jones and found that he had no functional impairments and no gross fatigue on repetitive or sustained activity. Further, the ALJ found Jones's complaints concerning fatigue not credible based on his own admission that on his "bad days" his daily activities include spending up to six hours a day at his computer and up to six hours a day watching television. This court does not decide questions of credibility. See Garner, 745 F.2d at 387. While the evidence may have also supported a different conclusion, there is substantial evidence in the record indicating that Jones is not disabled.
 
 Conclusion
 
 19
 Contrary to Jones's argument, there is no evidence in the record that the ALJ focused on Jones's periods of remission from multiple sclerosis in making the determination that he was not disabled. As the Secretary's decision is supported by substantial evidence, the decision by the district court denying Jones social security benefits is affirmed.[1]
 
 
 
 [1]
 As multiple sclerosis is a progressive disease, we remind the parties that this court's decision is without prejudice to the claimant's filing another application if his condition continues to worsen